## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---------------------------------------------------

HOMELAND INSURANCE COMPANY   :
OF NEW YORK,                     :
                               :   **Civil Action No.:**
    Plaintiff,                :
                               :
       vs.                   :   **COMPLAINT AND DEMAND FOR**
                               :      **TRIAL BY JURY**

CASTLE HILL HEALTHCARE     :
PROVIDERS, LLC, ADVANTAGE   :
REHABILITATION SERVICES, LLC, :
and ROMMEL LIGON,        :
                               :
    Defendants.              :

---------------------------------------------------

Plaintiff Homeland Insurance Company of New York ("Homeland"), for its Complaint against Defendant Castle Hill Healthcare Providers, LLC d/b/a Castle Hill Health Care Center ("Castle Hill") and Defendants Advantage Rehabilitation Services, LLC and Rommel Ligon (together, "Advantage Rehab"), alleges as follows:

### INTRODUCTION

1.     Homeland brings this action for declaratory judgment concerning the rights and obligations of Homeland under a policy of insurance issued to Castle Hill for the policy period of August 26, 2007 to August 26, 2008 (the "Homeland Policy").  A copy of the Homeland Policy is attached as Exhibit A.

2.     Homeland seeks a declaration that it has no duty under the Homeland Policy to provide coverage to Advantage Rehab in connection with *Nelson v. Castle Hill Healthcare Center, Rommel Ligon, and Advantage Rehabilitation Services, LLC*, Docket No. HUD-L-2724-07, filed in the Hudson County Law Division of the Superior Court of New Jersey.  In particular,

the Homeland Policy provides coverage for Advantage Rehab for a claim only when it also provides coverage for Castle Hill for the same claim.  Here, coverage is not available for Castle Hill for the *Nelson* action under the Homeland Policy.  Thus, the Homeland Policy does not provide coverage for Advantage Rehab for the *Nelson* action.

3.      Even if the Homeland Policy provides coverage for Advantage Rehab for the *Nelson* action (which it does not), such coverage is precluded by an exclusion in the Homeland Policy for any **Claim**[1] arising out of any **Wrongful Act** occurring after the **Retroactive Date** but before the **Inception Date** of the Homeland Policy that the **Insured**, as of the **Inception Date**, knew or should have known would or could result in a **Claim** (the "Prior Acts Exclusion").

4.      Alternatively, Homeland seeks reformation of the Homeland Policy to delete the additional insured coverage for Advantage Rehab that Castle Hill wrongfully obtained from Homeland or to reform the Homeland Policy to exclude coverage for Advantage Rehab for the *Nelson* action.

5.      In addition, Homeland brings this action to recover damages from Castle Hill caused by Castle Hill's material misrepresentations and omissions and Castle Hill's violation of the New Jersey Insurance Fraud Prevention Act, N.J.S.A. 17:33A *et seq*.

6.      Castle Hill is a long-term care facility.  Advantage Rehab provides physical therapists to Castle Hill pursuant to a services agreement.  Defendant Ligon is an employee of Advantage Rehab.  Upon information and belief, Advantage Rehab and Castle Hill share common ownership.

7.      In June 2006, Josephine Nelson was admitted to Castle Hill for physical therapy. During a physical therapy session with Defendant Ligon, Ms. Nelson fell and fractured her hip. Following her injury, Ms. Nelson's condition deteriorated and she passed-away in August 2006.

---

[1] Capitalized words in bold have the meaning given them in the Homeland Policy.

8.     In September 2006, counsel for Ms. Nelson's son commenced an investigation.  In December 2006, counsel for Ms. Nelson's son served a Petition for Presuit Discovery on Castle Hill seeking information and advising of counsel's intent to depose, among others, Defendant Ligon.  In May 2007, counsel for Ms. Nelson's son filed a complaint against Castle Hill and various fictitious defendants to be named later.

9.     From August 2006 to August 2007, Lexington Insurance Company ("AIG") provided insurance coverage for Castle Hill.  AIG is providing a defense for Castle Hill with regard to the complaint filed by Ms. Nelson's son.

10.     Upon information and belief, Advantage Rehab had no liability insurance at the time of Ms. Nelson's injury and death.

11.     Knowing that it was only a matter of time before Advantage Rehab and Ligon were named as defendants in an amended complaint, Castle Hill did not renew its policy with AIG when it expired in August 2007.  Castle Hill decided not to renew with AIG because Castle Hill knew that even if AIG agreed to provide coverage for Advantage Rehab as an additional insured on the Castle Hill policy, AIG would draft the policy to exclude coverage for Advantage Rehab for claims arising out of Ms. Nelson's injury, death, and the pending complaint.

12.     In an effort to obtain insurance coverage for the inevitable claim against Advantage Rehab and Defendant Ligon, Castle Hill turned to Homeland and requested and obtained liability insurance from Homeland for itself and Advantage Rehab as an additional insured on the Castle Hill policy.

13.     Although Castle Hill disclosed Ms. Nelson's injury and death to Homeland during the application process (for which Homeland knew Castle Hill had coverage through AIG), Castle Hill, which was in a position of vastly superior knowledge of the circumstances of Ms.

Nelson's injury and death relative to Homeland, failed to disclose the likely claim against Advantage Rehab and Defendant Ligon despite Castle Hill's knowledge of Defendant Ligon's intimate involvement in Ms. Nelson's injury, despite Castle Hill's knowledge that counsel for Ms. Nelson's son was investigating a claim against Ligon and Advantage Rehab, and despite Castle Hill's obligation to disclose such information during the application process.

14.     Moreover, during the application process, Castle Hill falsely represented that Advantage Rehab maintained separate liability insurance in the amounts of $1 million per claim or $3 million in the aggregate.

15.     Relying on Castle Hill's failure to disclose the developing claim against Defendant Ligon and Advantage Rehab and relying on Castle Hill's false representation that Advantage Rehab maintained separate liability insurance, Homeland issued a liability insurance policy to Castle Hill with Advantage Rehab named as an additional insured.

16.     After Castle Hill secured liability insurance for Advantage Rehab through material misrepresentations and omissions, counsel for Ms. Nelson's son filed an amended complaint adding Advantage Rehab and Ligon as defendants.

17.     Advantage Rehab and Ligon now seek coverage for the amended complaint from Homeland.  Such coverage, however, is not available.  In particular, since the Homeland Policy provides coverage for Advantage Rehab for a claim only when it also provides coverage for Castle Hill for the same claim and since coverage is not available for Castle Hill under the Homeland Policy for the *Nelson* action, the Homeland Policy does not provide coverage for Advantage Rehab for the *Nelson* action.

18.     In addition, even if the Homeland Policy provides coverage for Advantage Rehab for the *Nelson* action (which it does not), such coverage is precluded by the Prior Acts

Exclusion.

19.     Alternatively, Homeland is entitled to reform the Homeland Policy to delete the additional insured coverage for Advantage Rehab that Castle Hill wrongfully obtained or to reform the Homeland Policy to exclude coverage for Advantage Rehab for the *Nelson* action. Castle Hill knowingly made material misrepresentations and omissions concerning the developing claim against Advantage Rehab and Ligon and concerning separate liability insurance maintained by Advantage Rehab in connection with Castle Hill's request for additional insured coverage for Advantage Rehab. Castle Hill intended Homeland to rely on the misrepresentations and omissions in issuing additional insured coverage to Advantage Rehab. The misrepresentations and omissions were material to Homeland's decision to issue the additional insured coverage for Advantage Rehab. Had Homeland known about the developing claim against Advantage Rehab and Ligon or the lack of separate liability insurance for Advantage Rehab, Homeland would not have issued the additional insured coverage to Advantage Rehab or would have issued such coverage subject to other terms and conditions, such as excluding coverage for Advantage Rehab for any **Claim** arising out of Ms. Nelson's injury and death or arising out of the *Nelson* action.

20.     In addition, Castle Hill's material misrepresentations and omissions induced Homeland into providing coverage for Advantage Rehab as an additional insured. Castle Hill made material misrepresentations and omissions regarding the developing claim against Advantage Rehab and Ligon and regarding Advantage Rehab's maintenance of separate liability insurance in connection with Castle Hill's request for additional insured coverage for Advantage Rehab. Castle Hill knew or believed that Advantage Rehab and Ligon would be named as defendants in an action by Ms. Nelson's son and knew that Advantage Rehab did not

maintain separate liability insurance. Castle Hill intended Homeland to rely upon its material misrepresentations and omissions. Homeland reasonably relied upon Castle Hill's misrepresentations and omissions. Homeland has incurred resulting damages, including the payment of significant defense costs incurred in the defense of Advantage Rehab and Ligon in the *Nelson* action.

21.     Furthermore, Castle Hill violated the New Jersey Insurance Fraud Prevention Act by preparing or making written or oral statements intended to be presented to Homeland for the purpose of obtaining additional coverage for Advantage Rehab knowing that the statements contained false information or omitted material information concerning facts and circumstances material to the insurance application for the Homeland Policy and material to the Homeland Policy. Castle Hill also violated the New Jersey Insurance Fraud Prevention Act by concealing or knowingly failing to disclose evidence which may be relevant to a finding that Castle Hill violated the New Jersey Insurance Fraud Prevention Act.

## JURISDICTION AND VENUE

22.     The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States. Accordingly, this Court has jurisdiction over this matter pursuant to 28 U.S.C. Section 1332.

23.     Venue is proper in this District pursuant to 28 U.S.C. Section 1391.

## PARTIES

24.     Plaintiff Homeland Insurance Company of New York is a corporation organized and existing under the laws of the State of New York, with its principal place of business located at One Beacon Lane, Canton, Massachusetts 02021.

25.     Upon information and belief, Defendant Castle Hill Healthcare Providers, LLC

d/b/a Castle Hill Health Care Center is a long-term care facility located at 615 23rd Street, Union City, New Jersey 07087.

26.     Upon information and belief, Defendant Advantage Rehabilitation Services, LLC is an in-house therapy company serving fifteen sub-acute and skilled nursing facilities throughout New Jersey, including Castle Hill.  Advantage Rehab is located at 35 Journal Square, Suite 1103, Jersey City, New Jersey 07306.

27.     Upon information and belief, Defendant Ligon is a physical therapist employed by Advantage Rehab and resides at 84 Hixon Place, South Orange, New Jersey 07079.

### FACTUAL BACKGROUND

*The Initial Nelson Complaint and the AIG Policy*

28.     Prior to the Homeland Policy, Castle Hill was insured under a policy issued by AIG with a policy period of August 26, 2006 to August 26, 2007 (the "AIG Policy").  Advantage Rehab was not an additional insured under the AIG Policy.

29.     Advantage Rehab provides physical therapists to Castle Hill pursuant to a Therapy Services Agreement between Advantage Rehab and Castle Hill (the "Services Agreement").   A copy of the Services Agreement is attached as Exhibit B.

30.     On June 19, 2006, Ms. Nelson was admitted for physical therapy at Castle Hill.

31.     On June 29, 2006, during a physical therapy session with Defendant Ligon, Ms. Nelson fell and fractured her hip.

32.     On June 29, 2006, Defendant Ligon completed an Individual Statement Form ("Ligon's Individual Statement") providing his account of Ms. Nelson's injury.   A copy of Ligon's Individual Statement is attached as Exhibit C.

33.     On June 29, 2006, Defendant Ligon also completed an Investigation of Incident/Employee Statement ("Ligon's Employee Statement") providing his account of Ms. Nelson's injury.  A copy of Ligon's Employee Statement is attached as Exhibit D.

34.     On July 3, 2006, Castle Hill employee Elysia Mangold completed an Investigation of Incident/Employee Statement ("Mangold's Statement") describing, among other things, Defendant Ligon's account of Ms. Nelson's injury and "actions taken" by Castle Hill following Ms. Nelson's injury, including "counsel[ing]" Ligon "in private" about "our policy & procedure on using gait belts while ambulating residents."  A copy of Mangold's Statement is attached as Exhibit E.

35.     Castle Hill was aware of Defendant Ligon's involvement in Ms. Nelson's injury from the time of her injury.  Castle Hill also was aware at all times that Defendant Ligon was an employee of Advantage Rehab.

36.     Following her fall, Ms. Nelson's condition deteriorated and she passed-away on August 26, 2006.

37.     On September 21, 2006, counsel for Timothy Nelson (Ms. Nelson's son and the administrator of her estate) requested a copy of Ms. Nelson's records from Castle Hill (the "Records Request").

38.     On October 13, 2006, Castle Hill provided documents in response to the Records Request.

39.     On December 28, 2006, Castle Hill received a Petition for Presuit Discovery (the "Petition") from Mr. Nelson's counsel.  The Petition advised Castle Hill that "what is sought to be determined pre-suit is whether there are sufficient facts to establish that respondent ***and/or its employees/agents*** were negligent in assisting Josephine Nelson result[ing] in a fall, which

eventually led to her death." Emphasis added.  A copy of the Petition is attached as Exhibit F.

40.    The Petition also advised that Mr. Nelson counsel's sought to depose, among others, "the individual who completed the June 29, 2006 Individual Statement Form," *i.e.*, Defendant Ligon.

41.    On January 5, 2007, Omni Risk Management, on behalf of Castle Hill, provided notice of the Records Request and Castle Hill's response thereto to AIG *via* Oxford Coverage Inc.

42.    On May 31, 2007, Mr. Nelson filed a Complaint and Demand for Trial by Jury (the "Initial Complaint") in the Hudson County Law Division of the Superior Court of New Jersey alleging wrongdoing by defendants named therein in connection with Ms. Nelson's injury and death.  The Initial Complaint was captioned *Nelson v. Castle Hill Health Care Center* and assigned Docket No. HUD-L-2724-07.  A copy of the Initial Complaint is attached as Exhibit G.

43.    The Initial Complaint named as defendants: Castle Hill; John and/or Jane Does, M.D., "A" through "Z"; John and/or Jane Does, "A" through "Z"; and ABC Corporations, "A" through "Z."

44.    AIG is providing a defense for Castle Hill under the AIG Policy with regard to the *Nelson* action.

### Misrepresentations in the Homeland Application regarding Developing Claims against Advantage Rehab and Advantage Rehab's Maintenance of Separate Insurance

45.    On July 9, 2007, or about six weeks before the AIG Policy was scheduled to expire on August 26, 2007, Castle Hill applied for insurance coverage from Homeland instead of seeking to renew its policy with AIG.

46.    Castle Hill did not seek to renew its coverage with AIG because Castle Hill needed to secure insurance coverage for Advantage Rehab for the inevitable claim against

Advantage Rehab and Ligon in connection with the injury and death of Ms. Nelson. Castle Hill knew that even if AIG agreed to provide coverage to Advantage Rehab as an additional insured, AIG would include language in the policy specifically excluding coverage for Advantage Rehab for any claim against it arising out of Ms. Nelson's injury, death, and the ensuing and pending complaint.

47.    In connection with its request for insurance coverage from Homeland, Castle Hill specifically requested coverage for Advantage Rehab as an additional insured.

48.    As part of the application process, Castle Hill submitted to Homeland a Long Term Care Organization Professional Liability Application (the "Homeland Application"). A copy of the Homeland Application is attached as Exhibit H.

49.    At page 11 of the Homeland Application, Item J.6. asks whether "the applicant is aware of any fact, circumstance or situation that gives the applicant reason to believe that it might result in any future claim under the insurance for which this application is made" and if so, to explain such fact, circumstance or situation.

50.    Castle Hill failed to disclose that the *Nelson* action might result in a future claim against Advantage Rehab and Rommel Ligon despite Castle Hill's knowledge of Ligon's intimate involvement in the injury of Ms. Nelson, despite Castle Hill's knowledge that counsel for Ms. Nelson's son was investigating a claim against Ligon and Advantage Rehab, and despite Castle Hill's specific request that Homeland add Advantage Rehab as an additional insured under the Homeland Policy.

51.    In addition, by signing the Homeland Application, Castle Hill represented at page 13 of the Homeland Application that "the above statements and particulars are true" and that Castle has "not omitted or misstated any material facts" and that Castle Hill agrees "that this

Application shall be the basis for any insurance policy that is issued."

52.     Furthermore, at page 2 of the Homeland Application, Item B.2. requests that Castle Hill "[i]dentify all contracted professional services performed for the Applicant and indicate the required professional liability insurance limit you require them to maintain." In response, Castle Hill identified "Physical Therapy," among others, as a contracted professional service and identified $1 million per claim/$3 million in the aggregate as the required limits.

53.     Castle Hill contracted with Advantage Rehab pursuant to the Services Agreement for physical therapy services.

54.     Upon information and belief, Castle Hill falsely represented in the Homeland Application that Advantage Rehab maintained liability insurance with limits of $1 million per claim or $3 million in the aggregate.

55.     Despite its representation at page 13 of the Homeland Application that "the above statements and particulars are true" and that Castle has "not omitted or misstated any material facts," Castle Hill omitted or misstated material facts regarding the developing claim against Advantage Rehab and Ligon and regarding Advantage Rehab's maintenance of separate liability insurance.

56.     Notably, the Services Agreement between Castle Hill and Advantage Rehab also requires Advantage Rehab to maintain liability insurance. In particular, Item 10 of the Services Agreement provides as follows:

> Throughout the term of this Agreement, [Advantage Rehab] will maintain professional liability insurance in the amount of $1,000,000.00 and comprehensive general liability insurance in the amount of $1,000,000.00 per each occurrence and $2,000,000.00 in the aggregate, with an umbrella liability policy of not less than $5,000,000.00 per each occurrence and workers compensation insurance for the therapists providing services at the FACILITY [*i.e.*, Castle Hill] in such amounts as may be required by the laws

of state in which the FACILITY is located; provided, however, that ARS may at any time elect to self insure as to any or all such insurance coverage under one or more self insurance programs that comply with any and all applicable state and federal law. ARS will give FACILITY thirty (30) days' notice of its intent to self insure.

57.     In response to repeated requests by Homeland to Castle Hill, Advantage Rehab, and/or their agents regarding the existence of Advantage Rehab's separate liability insurance as referenced in the Homeland Application and as required in the Services Agreement, Homeland either received no response or incomplete responses and has been unable to verify or identify Advantage Rehab's supposed separate liability insurance. Upon information and belief, such insurance, which should have provided coverage for Advantage Rehab and Ligon for the *Nelson* action, does not exist, despite various representations and an agreement to the contrary.

**The Ligon Subpoena and the Amended Nelson Complaint**

58.     On or about April 24, 2008, counsel for Mr. Nelson served a subpoena on Defendant Ligon in connection with the *Nelson* matter (the "Ligon Subpoena").

59.     On or about May 15, 2008, Homeland received notice of the Ligon Subpoena.

60.     On May 21, 2008, defense counsel for Castle Hill advised Homeland that Mr. Nelson's counsel intended to amend the Initial Action within the following week to add Advantage Rehab and Ligon as defendants.

61.     On or about May 28, 2008, Mr. Nelson's counsel filed a First Amended Complaint and Demand for Trial by Jury (the "Amended Complaint"). The Amended Complaint names as defendants Castle Hill, Advantage Rehab, and Ligon.

62.     On or about June 11, 2008, Homeland received a copy of the Amended Complaint.

*The Homeland Policy, the Limited Coverage for Advantage Rehab, the Prior Acts Exclusion, and Homeland's Reservation of Rights*

63.     The Homeland Policy issued to Castle Hill reflects a policy period of August 26, 2007 to August 26, 2008.

64.     At the request of Castle Hill, Homeland added Advantage Rehab as an additional insured under the Homeland Policy.

65.     Endorsement No. 8 of the Homeland Policy adds Advantage Rehab as an additional insured and provides as follows:

> 1.      The term "Insured," as defined in the Policy, shall be deemed to include the person(s) or entity(ies) listed below (each an "Additional Insured"), but only with respect to liability of any such Additional Insured that is based on or arises out of a Claim for which coverage would otherwise be afforded to the original Insured under this Policy.
>
> **Additional Insured(s):**
>
> Advantage Rehabilitation Services, LLC
>
> 2.      It is understood and agreed that the Additional Insured(s) listed above is/are being afforded coverage under this Policy for any liability incurred *solely* as a result of the acts, errors or omissions of the original Insured.  No coverage will be available under this Policy for any Claim based on or arising out of any actual or alleged independent or direct liability of any Additional Insured.

Bold and italics in the original.

66.     Pursuant to paragraph 1 of Endorsement No. 8, Advantage Rehab is an **Insured** under the Homeland Policy only with respect to its liability that is based on or arises out of a **Claim** for which coverage for Castle Hill under the Homeland Policy would otherwise be afforded, *i.e.*, a **Claim** for which the terms or conditions of the Homeland Policy do not preclude coverage for Castle Hill.  Here, the terms and conditions of the Homeland Policy require that the

Claim be first made during the Policy Period.  Since the Initial Action was filed against Castle

Hill prior to the Policy Period, coverage is not available for Castle Hill under the Homeland

Policy for *Nelson*.  Consequently, Advantage Rehab is not an Insured under the Homeland Policy

with respect to the *Nelson* action and coverage is not available under the Homeland Policy for

Advantage Rehab for the *Nelson* action.

67.     Paragraph 2 of Endorsement No. 8 complements paragraph 1 of Endorsement No.

8 and underscores that coverage is available for Advantage Rehab under the Homeland Policy

only for its liability that is based on a **Claim** for which coverage also is available for Castle Hill

under the Homeland Policy.

68.     Section III. (D) of the Homeland Policy, titled "Exclusions Applicable to All

INSURING AGREEMENTS," sets forth the Prior Acts Exclusion.  In particular, Section III. (D)

provides as follows:

> Except as otherwise expressly provided in this Policy, this Policy
> does not apply to, and the Underwriter will not pay **Loss** or
> **Defense Expenses** for any **Claim** based upon, arising out of,
> directly or indirectly resulting from, in consequence of, or in any
> way involving any actual or alleged:
>
> > **Wrongful Act** or **Occurrence** that happened before
> > the **Retroactive Date** if applicable, or after the
> > **Retroactive Date** if, on the Inception Date of this
> > Policy, the **Insured** knew, had been told, should have
> > known or had notified a prior professional liability
> > insurer or administrator of any other risk transfer
> > instrument that such **Wrongful Act** or **Occurrence**
> > would or could result in a **Claim**.

69.     The Amended Complaint is a **Claim** based upon, arising out of, or directly or

indirectly resulting from a **Wrongful Act** allegedly committed by Advantage Rehab and Ligon

in June 2006, or after the Retroactive Date of August 26, 2005, that, as of the August 26, 2007

Inception Date, Castle Hill knew, had been told, or should have known would or could result in a

**Claim** against Advantage Rehab and Ligon.

70.    By letter dated May 21, 2008 from Homeland to Castle Hill, Homeland inquired whether the matter had been reported to "the prior insurance carrier of Advantage Rehabilitation Services, LLC" and reserved its rights with regard to the Prior Acts Exclusion (the "Homeland Reservation of Rights"). A copy of the Homeland Reservation of Rights is attached as Exhibit I.

71.    The Homeland Reservation of Rights also advised as follows:

> Since the facts of the case and the relationships between Advantage Rehabilitation Services and Castle Hill remains unclear, we must advise you OneBeacon expressly reserves all of its rights under the Policy and/or available at law to deny coverage on additional or alternative bases as other terms, conditions, exclusions, endorsements and provisions of the Policy, including representations, statements, declarations and omissions in connection with the Application incorporated therein, are found to be applicable.
>
> Nothing contained in or omitted from this letter should be deemed to be an admission by OneBeacon or a waiver of any of its rights.

## COUNT I

## DECLARATORY JUDGMENT AS TO
## THE SCOPE OF COVERAGE FOR ADVANTAGE REHAB

72.    Homeland reasserts and realleges each and every allegation contained in paragraphs 1 through 71, as if more fully set forth at length herein.

73.    A justiciable controversy presently exists between adverse parties Homeland, on one side, and Advantage Rehab and Castle Hill, on the other side. Castle Hill and Advantage Rehab seek coverage for Advantage Rehab for the *Nelson* action under the Homeland Policy, and Homeland disputes that such coverage is available. Homeland maintains that Endorsement No. 8 of the Homeland Policy does not provide coverage for Advantage Rehab with regard to the *Nelson* action. Homeland, Castle Hill, and Advantage Rehab are interested parties in this suit.

74.     Therefore, Homeland is entitled to a declaratory judgment that there is no coverage for Advantage Rehab under the Homeland Policy for the *Nelson* action because Endorsement No. 8 of the Homeland Policy does not provide such coverage.

## COUNT II

## DECLARATORY JUDGMENT AS TO THE PRIOR ACTS EXCLUSION

75.     Homeland reasserts and realleges each and every allegation contained in paragraphs 1 through 74, as if more fully set forth at length herein.

76.     A justiciable controversy presently exists between adverse parties Homeland, on one side, and Advantage Rehab and Castle Hill, on the other side.  Castle Hill and Advantage Rehab seek coverage for Advantage Rehab for the *Nelson* action under the Homeland Policy, and Homeland disputes that such coverage is available.  Homeland maintains that the Prior Acts Exclusion precludes coverage for Advantage Rehab with regard to the *Nelson* action.  Homeland, Castle Hill, and Advantage Rehab are interested parties in this suit.

77.     Therefore, Homeland is entitled to a declaratory judgment that there is no coverage for Advantage Rehab under the Homeland Policy for the *Nelson* action because the Prior Acts Exclusion of the Homeland Policy precludes such coverage.

## COUNT III

## REFORMATION OF THE HOMELAND POLICY

78.     Homeland reasserts and realleges each and every allegation contained in paragraphs 1 through 77, as if more fully set forth at length herein.

79.     Castle Hill knowingly made material misrepresentations and omissions concerning the developing claim against Advantage Rehab and Ligon and concerning separate liability insurance maintained by Advantage Rehab in connection with Castle Hill's

request for additional insured coverage for Advantage Rehab.

80.      Castle Hill intended Homeland to rely on the misrepresentations and omissions in issuing additional insured coverage to Advantage Rehab.

81.      The misrepresentations and omissions were material to Homeland's decision to issue the additional insured coverage for Advantage Rehab.

82.      Had Homeland known about the developing claim against Advantage Rehab and Ligon or the lack of separate liability insurance for Advantage Rehab, Homeland would not have issued the additional insured coverage to Advantage Rehab or would have issued such coverage subject to other terms and conditions, such as excluding coverage for Advantage Rehab for any **Claim** arising out of Ms. Nelson's injury and death or arising out of the *Nelson* action.

83.      Homeland has been injured by Castle Hill's material misrepresentations and omissions.

84.      As a consequence of the foregoing material misrepresentations and omissions, Homeland is entitled to reform the Homeland Policy to delete the additional insured coverage for Advantage Rehab or to reform the Homeland Policy to exclude coverage for Advantage Rehab for the *Nelson* action.

## COUNT IV

### MATERIAL MISREPRESENTATIONS AND OMISSIONS

85.      Homeland reasserts and realleges each and every allegation contained in paragraphs 1 through 84, as if more fully set forth at length herein.

86.      Castle Hill's material misrepresentations and omissions induced Homeland into providing coverage for Advantage Rehab as an additional insured.

87.     Castle Hill made material misrepresentations and omissions regarding the developing claim against Advantage Rehab and Ligon and regarding Advantage Rehab's maintenance of separate liability insurance in connection with Castle Hill's request for additional insured coverage for Advantage Rehab.

88.     Castle Hill knew or believed that Advantage Rehab and Ligon would be named as defendants in an action by Ms. Nelson's son and knew that Advantage Rehab did not maintain separate liability insurance.

89.     Castle Hill intended Homeland to rely upon its material misrepresentations and omissions.

90.     Homeland reasonably relied upon Castle Hill's misrepresentations and omissions.

91.     Homeland has incurred resulting damages, including the payment of significant defense costs incurred in the defense of Advantage Rehab and Ligon in the *Nelson* action.

### COUNT V

### CLAIM PURSUANT TO THE NEW JERSEY INSURANCE FRAUD PREVENTION ACT N.J.S.A. 17:33A-1 *ET SEQ.*

92.     Homeland reasserts and realleges each and every allegation contained in paragraphs 1 through 91, as if more fully set forth at length herein.

93.     This claim is brought pursuant to the New Jersey Insurance Fraud Prevention Act, N.J.S.A. 17:33A-1 *et seq.* (the "Fraud Act").

94.     The expressed purpose of the Fraud Act is to confront aggressively the problem of insurance fraud in the State of New Jersey.

95.     At all relevant times hereto, Homeland has been an insurance company within the meaning of the Fraud Act.

96.     At all times relevant hereto, Castle Hill has been a person within the meaning of

the Fraud Act.

97.     Pursuant to N.J.S.A. 17:33A-4(a)(4)(b), a person violates the Fraud Act if such person prepares or makes any written or oral statement intended to be presented to any insurance company or producer for the purpose of obtaining an insurance policy knowing that the statement contains any false or misleading information concerning any fact or thing material to an insurance application or contract.

98.     Castle Hill prepared or made written or oral statements intended to be presented to Homeland for the purpose of obtaining an insurance policy providing additional insured coverage to Advantage Rehab knowing that the statements contain false or misleading information concerning the developing claim against Advantage Rehab and Ligon and concerning the purported existence of separate liability insurance maintained by Advantage Rehab.  Such omissions and misrepresentations by Castle Hill were material to the Homeland Application and the Homeland Policy.

99.     A person also violates the Fraud Act if such person conceals or knowingly fails to disclose any evidence, written or oral, which may be relevant to a finding that a violation of N.J.S.A. 17:33A-4(a)(4) has or has not occurred.

100.     Despite repeated requests by Homeland to Castle Hill and/or its agents for information regarding the purported separate liability insurance maintained by Advantage Rehab, Castle Hill and/or its agents has or have concealed or knowingly failed to disclose evidence which may be relevant to a finding that Castle Hill violated N.J.S.A. 17:33A-4(a)(4)(b).

101.     Any insurance company damaged as a result of a violation of any provision of the Fraud Act may sue therefor in any court of competent jurisdiction to recover compensatory damages, which shall include reasonable investigation expenses, costs of suit, and attorneys fees.

102.    By reason of the foregoing, Homeland has been damaged.

**WHEREFORE**, Homeland respectfully requests that the Court grant a judgment in its favor, as follows:

1.    Declaring that Homeland has no obligation under the Homeland Policy to provide coverage for Advantage Rehab for the *Nelson* action because Endorsement No. 8 of the Homeland Policy does not provide such coverage;

2.    In the alternative, declaring that Homeland has no obligation under the Homeland Policy to provide coverage for Advantage Rehab or Ligon for the *Nelson* action because the Prior Acts Exclusion precludes such coverage;

3.    In the alternative, declaring that Castle Hill's material misrepresentations and omissions induced Homeland to issue additional insured coverage to Advantage Rehab and reforming the Homeland Policy to delete the additional insured coverage for Advantage Rehab or reforming the Homeland Policy to exclude coverage for Advantage Rehab for the *Nelson* action;

4.    Declaring that Castle Hill's material misrepresentations and omissions induced Homeland to issue additional insured coverage to Advantage Rehab and awarding Homeland damages;

5.    Declaring that Castle Hill violated the Fraud Act and awarding Homeland compensatory damages, including reasonable investigation expenses, costs of suit, and attorneys fees; and

6.    For such other and further relief as this Court deems just and proper.

Dated: Parsippany, New Jersey
       March 2, 2010

JOHN B. MULLAHY   (JBM 5364)
Kaufman Borgeest & Ryan, LLP
9 Campus Drive, 1st Floor
Parsippany, New Jersey 07054
Email: jmullahy@kbrlaw.com

*Attorney for Plaintiff*